IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 18 2014
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| WOODY GERARD SOLOMON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-179-A |
| | § | |
| DEE ANDERSON, ET AL., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION
### and
### ORDER

Came on to be considered the above-captioned action pursuant to 42 U.S.C. § 1983 wherein Woody Gerard Solomon is plaintiff and Dee Anderson ("Anderson"), Michael Gravitt ("Gravitt"), Officer Coleman ("Coleman"), Officer Daza ("Daza"), and Ms. C. McLucas ("McLucas") (collectively, "Tarrant County Defendants"), are defendants. Anderson is identified as Sheriff of Tarrant County Texas; the other defendants are identified as employees of the Tarrant County Jail.

Each defendant is named in his or her official and individual capacities.[1] Official capacity suits "generally

---

[1] Plaintiff filed this action in the United States District Court for the Eastern District of Texas, Tyler Division. In addition to the Tarrant County Defendants, the complaint also names as defendants Larry Doyle, Tina Staples, Karen Aniston, Roger Nixon, and Tonja Brown. The magistrate judge in the Eastern District severed the claims against the Tarrant County Defendants from the remaining claims, and transferred the claims against the Tarrant County Defendants to the Northern District of Texas, where the events involving those defendants occurred.

represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation omitted). Hence, a suit against the defendants in their official capacities would be considered a suit against Tarrant County ("County").

I.

Plaintiff's Complaint

Plaintiff alleges the following in the complaint:

At the time of the events giving rise to the claims against the Tarrant County Defendants, plaintiff was temporarily incarcerated at the County's jail while on a bench warrant for hearings related to his criminal case. Prior to and following plaintiff's temporary imprisonment with County, he was imprisoned in a unit of the Texas Department of Criminal Justice ("TDCJ").

When plaintiff arrived at Tarrant County Jail, he had two mesh bags issued by the TDCJ: one containing legal property, the other containing personal property that included books, a fan, personal hygiene items, and personal papers such as newspaper articles, photographs, letters and other personal papers. Upon arrival at the Tarrant County Jail, the intake officer inventoried the property, and plaintiff was allowed to keep as much of his legal property as he wanted, plus ten photographs and a few personal hygiene items.

In August 2011, two months after plaintiff arrived at Tarrant County Jail, plaintiff requested that some additional photographs and legal materials be released to him. This request was made through McLucas, who retrieved the photographs but not the legal materials. A few days later, plaintiff submitted another request through a different officer, who informed plaintiff his property bag could not be located. Other attempts by plaintiff to retrieve his property had the same result.

A few weeks later, plaintiff saw McLucas in the housing area where plaintiff was assigned. Plaintiff asked McLucas to take his property release request, but she refused. Plaintiff assumed the officers did not want to help him, so he stopped requesting his property.

Approximately seven months later, in April 2012, when plaintiff was preparing to return to his TDCJ unit, Coleman told plaintiff that his property still had not been located. Daza escorted plaintiff to a holding cell, and asked plaintiff for his copy of signed inventory papers so she could search for plaintiff's property. While in the holding cell, plaintiff saw McLucas "sneaking around in the area, then began [sic] staring hatefully" at plaintiff. Compl. at 4-C. At that time, plaintiff became suspicious of McLucas, because she was the last person to retrieve property from his property bag several months earlier.

Later, when plaintiff was moved from the holding cell, Daza told plaintiff they were still looking for his property.

On April 24, 2012, plaintiff was assigned to the Coffield Unit of the TDCJ in Tennessee Colony, Texas. On two separate occasions thereafter, plaintiff mailed to Anderson formal complaints concerning his lost property. However, plaintiff received no response. Plaintiff then sent a written complaint to Mark Wilson ("Wilson") with the Texas Commission on Jail Standards. Wilson responded on June 28, 2012, and attached to his response an email exchange between Wilson and Gravitt, where Gravitt stated that plaintiff's property had been forwarded to the Hutchins State Jail, and then to plaintiff's current unit at TDCJ. All the while, plaintiff was contacting employees at the Coffield Unit to try and locate his missing property. The last contact plaintiff had with the Tarrant County Defendants was December 16, 2013, when plaintiff was again at the Tarrant County Jail on a bench warrant. Plaintiff asked Daza about his property, but received no response. As of the date this action was filed, plaintiff's property has apparently not yet been returned.

Plaintiff contended that the defendants "conspired together to deprive plaintiff of his legal and personal property, and to assure that the property was never returned to plaintiff."

4

Compl. at 4-O. Specifically, plaintiff alleged that he has been seeking exoneration from his conviction through DNA testing, and was pursuing additional testing at the time his property was stolen, and that the Tarrant County Defendants conspired to deprive him of his property in an attempt to discourage him from coming to the Tarrant County Jail to pursue his appeal and his post-conviction remedies, and in retaliation for his challenges to his conviction and for being a "writ writer." Id.

## II.

### Review of In Forma Pauperis Complaint

Plaintiff filed this action in forma pauperis pursuant to 28 U.S.C. § 1915. Before ordering service of process, the court routinely reviews complaints such as this one to determine, inter alia, whether the complaint is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b). A claim is frivolous if it "lacks an arguable basis in either fact or law." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief can be granted when, assuming that all the allegations in the complaint are true even if doubtful in fact, such allegations fail to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Having thoroughly reviewed plaintiff's complaint, the court is satisfied that it fails to

state a claim upon which relief can be granted as to each defendant and thus should be dismissed.

### III.

### Analysis

Plaintiff contends that the defendants conspired together to deprive him of his legal and personal property. To prevail on a claim of civil conspiracy requires plaintiff to establish (1) an actual violation of a constitutional right, and (2) that the defendants acted in concert with the specific intent to violate the right. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

The crux of plaintiff's claims is for loss of property. The Supreme Court has held that the "deprivation of property by a state employee," whether intentional or negligent, is not a constitutional violation "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 531, 533; see also Parratt v. Taylor, 451 U.S. 527, 542-44 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Under Texas law, plaintiff may sue for the state-law tort of conversion as a remedy for his property loss. McClure v. Turner, 481 F. App'x 167, 172-73 (5th Cir. 2012) (per curiam); Murphy v. Collins, 26 F.3d 541, 543-44 (5th Cir. 1994). The Fifth Circuit has held that the availability of this tort is an adequate post-deprivation remedy for prisoners who attempt to

6

make constitutional claims based on the loss of their property. Murphy, 26 F.3d at 543-44. Because Texas provides an adequate post-deprivation remedy for the loss of property, such a loss fails to state a constitutional violation. Id. See also Stauffer v. Gearhart, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam) ("An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally.").

Because plaintiff has alleged nothing else in the complaint as would amount to a constitutional violation, he cannot make the showing required to establish his conspiracy claim. Cinel, 15 F.3d at 1343.[2]

Plaintiff's retaliation claim fares no better. In order to prove retaliation, plaintiff must allege the violation of a specific constitutional right, intent by the defendant to retaliate for the exercise of that right, a retaliatory adverse act, and show that the incident would not have occurred but for a retaliatory motive. Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory allegations of retaliation are insufficient. Woods, 60 F.3d at 1166. "The relevant showing in

---

[2]Nor has plaintiff alleged facts to show that the defendants acted in concert with the specific intent to violate any constitutional right. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).

7

...
...

such cases must be more than the prisoner's personal belief that he is the victim of retaliation." Johnson v. Rodriguez, 110 F.3d at 310 (internal quotation marks omitted).

The court has studied the allegations in the complaint, and finds that conclusory allegations are all that plaintiff has alleged in the instant action. There are no allegations to show, or even suggest, any retaliatory intent on the part of the defendants. Some of the allegations tend to support the opposite conclusion. For example, plaintiff alleges that a few months after arriving at the Tarrant County Jail, McLucas, at plaintiff's request, retrieved additional items of his personal property from the property room. Providing assistance to plaintiff in obtaining additional items from his property bag is inconsistent with an intent to retaliate against him by losing his property.

Although plaintiff claims the defendants purposely lost or destroyed his property because he sought exoneration from his criminal conviction and was a writ writer, no facts are alleged to show that any of the defendants were aware of plaintiff's status or purpose for being at the jail, or that any of them said or did anything that could be construed as an intent to retaliate. The complaint does not allege that any of the defendants ever discussed with plaintiff the purpose of his stay

...

8

at the jail, or that any of them mentioned it in any way. Nor is the complaint at all clear what plaintiff means by being a "writ writer." To the extent he is referring to grievances he wrote concerning the lost property, such an allegation is nonsensical: plaintiff would be alleging that defendants lost his property in retaliation for writing grievances about the property that was already lost. No other mention is made in the complaint of any writs or grievances plaintiff wrote or of knowledge by any of the defendants of the same. In sum, the complaint shows that plaintiff's personal belief that he is the victim of retaliation is all that can be found in support thereof, and such is insufficient to state a claim for retaliation. Johnson, 110 F.3d at 310.

Nor can plaintiff prevail on his official capacity claims, which the court has considered as claims against County. It is well-settled that a local government entity cannot be held liable for the acts of its employees solely on a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). Liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, __

U.S. __, 131 S. Ct. 1350, 1359 (2011) (quoting <u>Monell</u>, 436 U.S. at 692) (internal quotation marks omitted).

To hold County liable under § 1983 requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." <u>Spiller v. City of Texas City, Police Dept.</u>, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Connick</u>, 131 S. Ct. at 1359. Liability against local government defendants pursuant to § 1983 thus requires proof of a policymaker, an official policy, and a violation of plaintiff's constitutional rights whose "moving force" is the policy or custom. <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

Here, plaintiff has failed to meet this threshold requirement. Not only does the complaint fail to allege anything pertaining to the existence of any policymaker, policy, or custom, the court has concluded that the complaint fails to allege the violation of a constitutional right. Accordingly, there is no basis on which to find County liable to plaintiff in this action.

Plaintiff also alleges that the defendants' actions violated state laws. However, "[v]iolation of a state statute is not actionable under § 1983." <u>San Jacinto Sav. & Loan v. Kacal</u>, 928 F.2d 697, 701 n.4 (5th Cir. 1991).

### IV.

### Order

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, Woody Gerard Solomon, against defendants, Anderson, Michael Gravitt, Coleman, Daza, and McLucas, in their individual and official capacities, be, and are hereby, dismissed pursuant to the authority of 28 U.S.C. §§ 1915A(b)(1).

SIGNED March 18, 2014.

JOHN McBRYDE
United States District Judge